IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS DIMITRE, | No. CIV S-10-1194-FCD-CMK |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| AFSCME DISTRICT COUNCIL 57, | |
| Defendant. | |

Plaintiff brings this civil action, proceeding in pro se, for breach of a collective bargaining agreement. Pending before the court are plaintiff's and defendant's cross-motions for summary judgment (Docs. 22, 27). A hearing on the motions was held on November 18, 2010, before the undersigned. Defendant's attorney Andrew Baker, appeared telephonically. Plaintiff was not present.

**I.     BACKGROUND**

This action was originally filed in the Siskiyou County Small Claims Court. Defendant removed the case to this court based on federal question jurisdiction. Defendant then filed a motion to dismiss. However, prior to the motion being heard, plaintiff filed an amended complaint. Defendant then filed an answer, and the parties have filed cross-motions for summary

judgment as they both claim the facts are not disputed.  The issue in this case is whether the grievance procedures and arbitration clause in their collective bargaining agreement is applicable in this action, and if not, whether Plaintiff's claim for severance pay is meritorious.

## II.	SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
>
> Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the

1  allegations or denials of its pleadings but is required to tender evidence of specific facts in the
2  form of affidavits, and/or admissible discovery material, in support of its contention that the
3  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party
4  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
5  of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
6  T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and
7  that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict
8  for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

9         In the endeavor to establish the existence of a factual dispute, the opposing party
10  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
11  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
12  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
13  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
14  genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
15  committee's note on 1963 amendments).

16         In resolving the summary judgment motion, the court examines the pleadings,
17  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
18  any. See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See
19  Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed
20  before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
21  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
22  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
23  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
24  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
25  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
26  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

1  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

2  **III.   DISCUSSION**

3  **A.   Undisputed Facts**

4  This case arises out of a dispute as to severance pay following plaintiff's
5  employment termination with AFSCME District Council 57 (Council). The parties agree that
6  plaintiff was employed as a Business Agent with AFSCME, and that employment was governed
7  by a collective bargaining agreement (CBA), which is attached to the amended complaint.

8  Plaintiff was terminated for cause on February 19, 2009. Plaintiff submitted with
9  his motion the e-mail terminating his employment. On February 24, 2009, plaintiff submitted
10 (apparently through his union) a grievance regarding, *inter alia*, the two week severance pay
11 provided for in the CBA. This grievance was submitted to the Executive Director, George
12 Popyack. On February 25, 2009, the Executive Director denied the grievance. Mr. Popyack
13 stated that the termination was for cause based on the information he had and the investigation
14 which was done.

15 Pursuant to the CBA, the next step in the process was for the grievance to be
16 heard by the Council Executive Board. The request for such a hearing on the grievance was
17 required to be in writing and submitted to the President of Council. A hearing was then to be
18 held between 10 and 40 days after receipt of the written request. However, in Mr. Popyack's
19 grievance denial, he suggested placing the issue on the agenda for hearing at the next Board
20 meeting, which was two days later. Mr. Popyack acknowledged the hearing would be less than
21 10 days, but thought the Executive Board would waive the time requirements. However,
22 Plaintiff was unwilling to waive the time requirements. This is where the parties disagree in their
23 interpretation of the facts of what then happened.

24 **B.   Disputed Facts**

25 Plaintiff claims following Mr. Popyack's denial, he <u>verbally</u> requested the hearing
26 take place within the time provided (10 to 14 days). However, he does not provide any written

request thereto, a fact Defendant finds supportive. No hearing was ever held. Apparently there was a meeting on October 19, 2009, wherein Plaintiff asked about the hearing for the pending grievance. Plaintiff states that "Mr. Popyack's response made it clear that he had no intention of ever processing my grievance through the CBA." Plaintiff then filed his small claims action on April 15, 2010.

Defendant claims, as supported by the uncontested exhibits attached in support of the motion, that following the grievance denial e-mail of February 25, 2009, Mr. Popyack received an e-mail from plaintiff's union representative on the same day. In that e-mail, the union representative stated plaintiff was not waiving the time-lines, but was interested in reaching a settlement. On March 1, 2009, Mr. Popyack responded that he had been authorized to work out a settlement agreement. He indicated that if plaintiff was interested in reaching a settlement, he was to contact Mr. Popyack. Mr. Popyack then received another email from a union representative on March 2, 2009, again indicating an interest in reaching a settlement. Mr. Popyack submitted proposed terms of a settlement on March 2, 2009. No response was received until March 26, 2009, after Mr. Popyack sent a follow up e-mail requesting a response. The response indicated the union representative was waiting to hear from plaintiff. On April 28, 2009, the union representative forwarded Mr. Popyack an e-mail she had received from plaintiff requesting to begin the arbitration process, and asking for the status of the severance pay.

On May 5, 2009, the union representative e-mailed Mr. Popyack requesting, in writing, <u>arbitration</u> regarding the severance pay. Included in this May 5, 2009, e-mail, was an e-mail from plaintiff stating that because the issue has not settled, and the Board failed to set the grievance for hearing within the 10 to 40 days required, he asks to go to arbitration. Mr. Popyack responded noting no request to schedule a hearing had been received after his original offer to expedite the process was turned down. The union representative responded that it was her understanding that plaintiff had appealed directly to the board. Mr. Popyack questioned plaintiff's direct appeal to the Board, and requested a copy of it in order to move forward. The

union representative wrote back that she thought plaintiff met with the Board. Nothing further was received from the union about plaintiff's grievance nor was a copy of the written request for a hearing.

      Mr. Popyack's recollection of the October 19, 2009, meeting with plaintiff differs from plaintiff. Mr. Popyack states that when plaintiff spoke to him, Mr. Popyack told him that no one had ever referred his grievance in writing for a hearing before the Executive Board.

    **C.**    **Collective Bargaining Agreement**

      The following sections in the CBA are relevant to this case:

Section 22 - Severance Pay

In the event of layoff, the Staff member shall receive two (2) weeks notice or two (2) weeks pay. In cases of discharge for cause, the Staff member shall receive two (2) weeks notice or two (2) weeks pay in lieu of notice.

Section 25 - Disciplinary Actions

Staff may be given written warnings, suspended, demoted or dismissed for just cause only. The Council Director may impose discipline. . . . Discipline may be imposed only after written notice is given to the Staff member being disciplined notifying him/her of:
    1. The disciplinary action being taken.
    2. The causes for the disciplinary action.
    3. The Staff members right to grieve the action, and his/her right to representation.

Disciplinary actions shall become effective five (5) days after receipt of written notice. Notice of disciplinary action shall be mailed to the assigned office of the Staff member.

Disciplinary actions may be grieved pursuant to the Grievance Procedure cited in this Agreement, except that in the case of dismissal, should the decision of the Executive Board be unsatisfactory to the grievant, s/he shall have the right to submit the matter to final, binding arbitration. . . .

Notwithstanding the above, in cases requiring immediate disciplinary action, the Council Director, with the consent of the Council President, may take immediate disciplinary action.
. . .

<u>Section 30 - Grievance Process</u>

A. Step I
Any problem with regard to classification, pay, duties, working conditions, training or supervision shall be presented by the employee initially in writing to the Council Director . . . ; such written presentation shall include a statement of the complaint, an outline of the facts forming the basis for the complaint, and a statement of the remedy desired.
. . .

B. Step II
Should the grievant be dissatisfied with the immediate supervisor's response at Step I, s/he may present such grievance in writing to the President of Council 57 for agendizment and hearing at the next regular or special meeting of the Council 57 Executive Board, such meeting to be no less than ten (10) days nor more than forty (40) days from the date the written grievance was referred to that body. The grievant's statement of referral shall specify which aspects remain at issue, together with the resolution desired.

Within five (5) working days of the grievant's referral of the grievance to the Council 57 Executive Board, grievant shall be notified in writing of the date, time and place at which the grievance will be heard. At the time of hearing, grievant may be represented by any person o[f] his/her choice, and may present any oral or written evidence to substantiate his/her position.

Within ten (10) working days of the Council 57 Executive Board hearing on such grievance, the grievant shall be presented in writing, either in person or by mail, with the Executive Board's response to such grievance.

**D.   Cross-Motions:**

Plaintiff's argument is simply that when he was terminated, the defendant failed to pay him his two weeks severance pay pursuant to Section 22. He claims the severance clause is not arbitrable, but that even if it is subject to arbitration, he has been estopped from pursuing that remedy because defendant has refused to process his grievance.

On the other hand, defendant first argues that the issue of severance pay is subject to the arbitration clause, plaintiff failed to exhaust his contractual remedies and therefore this case must be dismissed. Second, even if not subject to the arbitration clause, plaintiff's claim has no merit under the CBA and the action should be dismissed.

Generally, in an action alleging a breach of a collective bargaining agreement, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the CBA. See Del Costello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 163 (1983).

The clauses in the CBA at issue, as outlined above, provide for a grievance process. While the grievance and arbitration process in the CBA does not appear to be mandatory, it is provided for nonetheless. The parties do not seem to contest whether or not there is a grievance process to be followed, but rather whether plaintiff was required to comply with it as related to his severance pay and/or whether he was somehow blocked from completing the process.

As to the first, the undersigned finds that plaintiff was required to follow the grievance/arbitration process as it is provided for in the CBA, as his claim for severance pay can only be resolved by referring to the terms of the CBA. See United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 37-38 (1987). While not eloquently written, it appears that the intent of the CBA is for the grievance process to be followed in the situation of any employment dispute. This would include a dispute over severance pay. The grievance process provided for in this CBA has an appearance of being permissive rather than mandatory. However, as there is a grievance process provided, it is to be complied with prior to any legal action. See id.

The next issue is whether Plaintiff failed to follow the procedure provided, or whether plaintiff was somehow blocked from the process. Plaintiff's position that he was blocked in his attempts to process his grievance apparently stems from the April 28, 2009, e-mails wherein he requested to begin the arbitration process. Defendant argues that Plaintiff never completed the second step, formally requesting a hearing by the Executive Board. Therefore, a request to begin arbitration is out of step.

Reviewing the communications the parties submitted, the undersigned finds that the grievance process was sidetracked by the settlement negotiations which were not completed.

However, Plaintiff has provided no evidence that he submitted a formal, written request to have a hearing by the Board, as set forth in the CBA. This was step two in the CBA grievance process, and a necessary step prior to arbitration. The parties talked around the Board hearing, with Mr. Popyack offering to waive the time requirements and have the hearing heard early, and plaintiff refusing to waive the time. However, there is no evidence that Plaintiff actually made a formal request, nor is there any evidence that Plaintiff was ever actually denied a hearing.[1] As no hearing was requested and/or held, his request to participate in arbitration was out of step.

As there is a grievance process provided for in the CBA, and in order to resolve the dispute presented to the court the court must refer to the CBA, the grievance process must be complied with prior to bring a legal action. The grievance process provided for includes the ability to arbitrate the dispute. Thus, Plaintiff's claims are unexhausted, and defendants' motion for summary judgment should be granted.[2]

### IV.   CONCLUSION

The grievance procedure provided for in the CBA should apply to the claims raised herein. As the process was not complied with, including arbitration, the court should refrain from addressing the merits of the dispute.

Based on the foregoing, the undersigned recommends that defendant's motion for summary judgment (Doc. 27) be granted and Plaintiff's motion for summary judgment (Doc. 22) be denied.

///

---

[1] There does not appear to be any time limit as to when plaintiff may submit his formal request for a hearing before the Board. Such a hearing must be held between 10 and 40 days from the date the request is made, but the CBA does not set a specific limitation on when he may submit the formal written request. Whether there is some statute of limitation issue is not before the court, and has not been addressed. However, it appears possible that the grievance process may still be available to Plaintiff.

[2] As dismissal is appropriate for failure to exhaust administrative remedies, it is not appropriate to address the merits of Plaintiff's claim. To do so would require interpretation of the CBA prior to the grievance process being complete.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 8, 2010

                                                        */s/ Craig M. Kellison*
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE